ELISE M. BLOOM
RUSSELL L. HIRSCHHORN
NOA M. BADDISH
JOSHUA S. FOX
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000
(212) 969-2900

*Attorneys for Defendant*
*The National Football League*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X | |
| JAMES BUCKLEY, RODNEY DAVIS, MARIO DI FONZO, EDWARD L. DU BOIS, III, DON FUHRMAN, WALTER MARTIN, MARK NINEHOUSER, JOHNNY SMITH, and RICHARD WELSH | 18-cv-03309 (LGS)  **ECF CASE** |
| Plaintiffs, | |
| -against- | |
| THE NATIONAL FOOTBALL LEAGUE, | |
| Defendant. | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION**

## **TABLE OF CONTENTS**

                                                                                                                                           **Page**

PRELIMINARY STATEMENT ................................................................................................... 1

I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................. 2

        A.      The Parties ............................................................................................................. 2

        B.      The Security Representative Consulting Agreements and Arbitration Provisions............................................................................................................... 2

        C.      Plaintiffs Commenced the Instant Litigation in Federal Court Notwithstanding Their Prior Agreements to Arbitrate ........................................... 3

ARGUMENT .................................................................................................................................. 5

I.      PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THEIR CLAIMS. .......... 5

        A.      This Dispute Is Governed by the Federal Arbitration Act ..................................... 5

        B.      The Federal Arbitration Act Requires Arbitration of Plaintiffs' Claims ................ 6

                1.      The Parties Entered into Valid and Enforceable Agreements to Arbitrate. ................................................................................................... 7

                2.      Plaintiffs' Agreements to Arbitrate Encompass the Claims in the Complaint................................................................................................... 8

                3.      Plaintiffs' Statutory Claims are Arbitrable. ............................................. 10

II.     THE COURT SHOULD ENTER A STAY DURING THE PENDENCY OF THE ARBITRATION PROCEEDINGS. ................................................................................. 12

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995)...........................................................................................................5, 6

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)...............................................................................................................6

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)...............................................................................................................7

*Bird v. Shearson Lehman/Am. Exp., Inc.*,
  926 F.2d 116 (2d Cir. 1991).................................................................................................11

*Braithwaite v. Edgewood Mgmt. Corp.*,
  No. 12-cv-3769 (WDQ), 2014 WL 69107 (D. Md. Jan. 7, 2014) ........................................11

*Brown v. TrueBlue, Inc.*,
  No. 1:10-cv-0514, 2011 WL 5869773 (M.D. Pa. Nov. 22, 2011).......................................11

*Bynum v. Maplebear Inc.*,
  160 F. Supp. 3d 527 (E.D.N.Y. 2016) .................................................................................10

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001)...............................................................................................................6

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)...............................................................................................................7

*Echevarria-Hernandez v. Affinitylifestyles.com, Inc.*,
  No. 2:16-cv-00943 (GMN) (VCF), 2017 WL 1160571 (D. Nev. Mar. 27,
  2017) ....................................................................................................................................11

*Ekryss v. Ignite Rest. Grp., Inc.*,
  No. 15-cv-6742 (CJS), 2016 WL 4679038 (W.D.N.Y. Sept. 7, 2016).................................11

*Epic Sys. Corp. v. Lewis*,
  584 U.S. __, 200 L. Ed. 2d. 889 (2018)............................................................................6, 11

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991).....................................................................................................9, 10, 11

*Gold v. Deutsche Aktiengesellschaft*,
  365 F.3d 144 (2d Cir. 2004)...................................................................................................8

*Grant v. Morgan Stanley Smith Barney LLC*,
  No. 16-cv-81924, 2017 WL 1044484 (S.D. Fla. Mar. 20, 2017) .........................................11

*Graphic Scanning Corp. v. Yampol*,
  850 F.2d 131 (2d Cir. 1988)...................................................................................................6

*Hanks v. Briad Rest. Grp., L.L.C.*,
   No. 2:14-cv-00786 (GMN), 2015 WL 4562755 (D. Nev. July 27, 2015) ............................... 11

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163, 169 (2d Cir. 2004) ........................................................................................... 7

*Johnson v. CRC Holdings, Inc.*,
   No. 16-cv-2937 (JKB), 2017 WL 914998 (D. Md. Mar. 8, 2017) .......................................... 11

*Katz v. Cellco P'ship*,
   794 F.3d 341 (2d Cir. 2015) ................................................................................................. 12

*Mehler v. Terminix Int'l Co. L.P.*,
   205 F.3d 44 (2d Cir. 2000) ................................................................................................. 8, 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614, 615 (1985) ..................................................................................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................................................... 7

*Murphy v. Canadian Imperial Bank of Commerce*,
   709 F. Supp. 2d 242 (S.D.N.Y. 2010) .................................................................................. 11

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ................................................................................................... 7

*Ouedrago v. A-1 Int'l Courier Serv., Inc.*,
   No. 12-cv-5651 (AJN), 2014 WL 1172581 (S.D.N.Y. Mar. 21, 2014) ................................. 10

*Powers v. Fox Television Stations, Inc.*,
   923 F. Supp. 21 (S.D.N.Y. 1996) ....................................................................................... 9, 10

*Ranieri v. Banco Santander, S.A.*,
   No. 15-cv-3740, 2017 WL 374468 (D.N.J. Jan. 25, 2017) ................................................... 11

*Rodriguez-Depena v. Parts Auth.*,
   877 F.3d 122 (2d Cir. 2017), *cert. denied*, No. 17-1494, 2018 WL 2046393
   (June 11, 2018) ..................................................................................................................... 11

*Salzano v. Lace Entm't*,
   No. 13-cv-5600 (LGS), 2014 WL 3583195 (S.D.N.Y. July 18, 2014)
   (Schofield, J.) ................................................................................................................. passim

*Spencer v. CVS*,
   No. 16-cv-7593 (RBK) (AMD), 2017 WL 1293980 (D.N.J. Apr. 5, 2017) ........................... 11

*Thomas v. Pub. Storage, Inc.*,
   957 F. Supp. 2d 496 (S.D.N.Y. 2013) ................................................................................ 9, 11

*Virk v. Maple-Gate Anesthesiologists, P.C.*,
   657 F. App'x 19 (2d Cir. 2016) ............................................................................................ 12

*Williams v. Dearborn Motors 1, LLC*,
   No. 17-cv-12724, 2018 WL 2364051 (E.D. Mich. May 24, 2018) ....................................... 11

*Zeller-Landau v. Sterne Agee CRT, LLC,*
    No. 17-cv-3962, 2018 WL 334970 (E.D. Pa. Jan. 9, 2018) ..................................................11

**STATUTES**

9 U.S.C. § 1 *et seq.* ............................................................................................................................6

9 U.S.C. §§ 3, 4 ..........................................................................................................................1, 6, 7

Age Discrimination in Employment Act ("ADEA") ......................................................3, 10, 11

Employee Retirement Income Security Act ("ERISA") ...................................................4, 5, 9, 11

Fair Labor Standards Act ("FLSA") ................................................................................ passim

Federal Arbitration Act ("FAA") ..................................................................................... passim

Florida Civil Rights Act ..............................................................................................................5

Maryland Code Labor and Employment § 3-501 *et seq.* ............................................................5

Maryland Fair Employment Practices Act ..................................................................................5

Michigan Compiled Laws § 408.471 *et seq.* ..............................................................................5

Michigan's Elliott Larsen Civil Rights Act .............................................................................5, 11

Nevada Fair Employment Practices Act .....................................................................................5

Nevada Revised Statutes § 608.005 *et seq.* ..........................................................................5, 12

New Jersey State Labor Laws .....................................................................................................5

New York City Human Rights Law ("NYCHRL") ..............................................................3, 4, 5

New York Labor Law ("NYLL") ..........................................................................4, 5, 9, 10, 11

New York State Human Rights Law ("NYSHRL") ..............................................................3, 5, 11

Pennsylvania Code § 231.1 *et seq.* .............................................................................................5

Pennsylvania Human Relations Act ............................................................................................5

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................4, 5

**PRELIMINARY STATEMENT**

Defendant The National Football League ("Defendant" or the "NFL") respectfully moves this Court for an Order pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4: (i) compelling Plaintiffs James Buckley, Rodney Davis, Mario Di Fonzo, Edward DuBois III, Don Fuhrman, Walter Martin, Mark Ninehouser, Johnny Smith, and Richard Welsh (collectively, "Plaintiffs") to arbitrate the claims pled in the First Amended Complaint (the "Complaint"); and (ii) staying this action during the pendency of the arbitration proceedings.

Plaintiffs each entered into consulting agreements ("Agreements") with the NFL to provide services as Security Representatives ("SRs") on an independent contractor basis. The Agreements contained broad arbitration provisions, which provided, in relevant part, that: "…**any dispute arising out of or related to this Agreement or the services performed by Consultant pursuant to this Agreement shall be referred to final and binding arbitration pursuant to the procedures of the American Arbitration Association**." (Declaration of Elise M. Bloom, Esq. ("Bloom Decl."), Exs. A through I, ¶ 18(e).)

Notwithstanding the clear terms of their Agreements, Plaintiffs filed the instant lawsuit in federal court, alleging, *inter alia*, that the NFL terminated their Agreements on the basis of age contrary to federal and state laws; misclassified them as independent contractors under federal and state wage-and-hour laws and, as a result, failed to comply with those statutes' recordkeeping and/or wage statement requirements; and deprived them of pension and welfare benefits. But these claims—which lack merit and many of which fail at the pleading stage—are subject to mandatory arbitration because: (i) the arbitration provisions in each of the Plaintiff's Agreements are valid and enforceable; (ii) the claims unquestionably arise out of and relate to the Agreements; and (iii) Plaintiffs cannot establish that the legislature intended to preclude

arbitration of their statutory claims.  Because it is clear that the FAA, as well as Supreme Court and Second Circuit precedent interpreting the FAA, require arbitration of Plaintiffs' claims, Defendant respectfully requests that this Court compel arbitration of each Plaintiff's claims pursuant to the procedures of the American Arbitration Association ("AAA") and stay this matter until those claims are resolved in that appropriate forum.

## I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Parties

The NFL, an unincorporated association, is the premiere American professional football league, whose headquarters are located at 345 Park Avenue, New York, New York.  (Am. Compl. ¶ 41 (Dkt. 28).)  The NFL is comprised of thirty-two (32), separately-owned professional football teams, referred to as Member Clubs, which operate and are located in numerous states throughout the country.  (Am. Compl.  ¶ 42.)

Plaintiffs are nine (9) former SRs who each contracted with the NFL to provide investigative and security services on an independent contractor basis pursuant to their respective Agreements.  (Bloom Decl., Exs. A through I, ¶ 1.)  Plaintiffs performed services as SRs for various periods of time and in different states throughout the country:  Buckley and Davis in New Jersey; Di Fonzo in Maryland; Du Bois III in Florida; Ninehouser in Pennsylvania; Martin in Michigan; Fuhrman in New York; Welsh in Maryland; and Smith in Nevada.  (Am. Compl. ¶¶ 23, 25, 27, 29, 32, 34, 36, 38, 40.)

### B.     The Security Representative Consulting Agreements and Arbitration Provisions

Each Plaintiff most recently entered into a "Security Representative Consulting Agreement" with the NFL on different dates during 2016.  (Bloom Decl., Exs. A through I.) Each Plaintiff's Agreement sets forth the parties' respective contractual obligations, and included

2

a broad arbitration clause that affirmed each Plaintiff's commitment to arbitrate all disputes relating to or arising out of his contractual relationship with the NFL and the services provided thereunder.  Paragraph 18(e) of each Agreement specifically stated, in relevant part:

> any dispute arising out of or related to this Agreement or the services performed by Consultant pursuant to this Agreement shall be referred to final and binding arbitration pursuant to the procedures of the American Arbitration Association. The arbitration shall be conducted in accordance with the American Arbitration Association Rules. Any such arbitration shall be instituted in New York County, New York. Both parties shall give the arbitrator access to all documents, facilities, and personnel within their respective control to permit the arbitrator to perform his or her function.  Judgment upon the award rendered may be entered in any court having jurisdiction. Each party shall pay an equal share of the arbitrator's fees and expenses and shall bear its own attorneys' fees, witness fees and other costs concerning the arbitration.

(Bloom Decl., Exs. A through I, ¶ 18(e).)  Paragraph 18(e) of the Agreement was conspicuously placed under the italicized heading, "Dispute Resolution," on the final page of text in the Agreement, directly preceding the signature block.  (*Id.*)

Plaintiffs' respective Agreements also set forth other terms relating to the services each Plaintiff provided as a SR.  For example, each Plaintiff expressly agreed that he was furnishing services as an independent contractor and not as an employee of the NFL or any of its Member Clubs or affiliates.  (*Id.* at ¶ 13.)  Each Plaintiff also acknowledged that he was not entitled to any benefits afforded to NFL employees and that the NFL would not withhold or pay any taxes with respect to amounts payable to him.  (*Id.*)

### C. Plaintiffs Commenced the Instant Litigation in Federal Court Notwithstanding Their Prior Agreements to Arbitrate

On April 16, 2018, Plaintiffs commenced the instant lawsuit by filing an eight-count Complaint in federal court, alleging that the NFL terminated their respective contracts in July 2017 based on their age in violation of the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights

Law ("NYCHRL").  (Compl. ¶¶ 130-148 (Dkt. 1).)  The Original Complaint also purported to assert claims under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the Employee Retirement Income Security Act ("ERISA") based upon Plaintiffs' allegation that they were misclassified as independent contractors.  (Compl. ¶¶ 149-172.)

On June 6, 2018, in accordance with Section III.A.3 of this Court's Individual Rules and Procedures, Defendant wrote to Plaintiffs regarding their prior agreements to submit their claims to final and binding arbitration.  (Bloom Decl., Ex. J.)  Defendant advised Plaintiffs that if they did not consent to arbitration, Defendant intended to move promptly to compel arbitration.  (*Id*.)  On June 14, 2018,[1] Plaintiffs advised that they did not consent to arbitration, alleging that the arbitration provision was not valid or enforceable.  Plaintiffs, however, failed to cite to any authority in support of this argument, which this Court's Individual Rules and Procedures also require.  (Bloom Decl., Ex. K; *see also* Sec. III.A.3 of Judge Schofield's Individual Rules and Procedures.)  At the initial conference on June 21, 2018, the Court directed Defendant to file its motion to compel arbitration by July 24, 2018.[2]  (Dkt. 23.)

On July 3, 2018, Plaintiffs filed the First Amended Complaint, which contained essentially the same factual allegations as the Original Complaint, but added claims under the discrimination and wage-and-hour statutes of the states in which Plaintiffs lived and/or worked[3]

---

[1] Pursuant to this Court's Individual Rules and Procedures, Plaintiffs' response was due on June 13, 2018.

[2] On June 6, 2018, Defendant filed a pre-motion letter, advising the Court of its intent to move to dismiss certain claims pursuant to Federal Rule of Civil Procedure 12(b)(6), including: all claims under the NYCHRL, NYSHRL, and NYLL asserted by Plaintiffs who neither lived nor worked in the State and/or City; Plaintiffs' FLSA claims for failure to plead a cognizable basis for relief under the statute; and, Plaintiffs' ERISA claims on the grounds that they are time-barred, and that Plaintiffs failed to exhaust their administrative remedies.  (Dkt. 18.)  At the initial conference, Plaintiffs indicated their intent to amend the Complaint in an attempt to remedy the obvious pleading deficiencies by July 3, 2018.  (Dkt. 20, 23.)  The Court ordered that Defendant need not answer or file a Rule 12(b)(6) motion in response to Plaintiffs' First Amended Complaint during the pendency of Defendant's motion to compel arbitration.  (Dkt. 23.)

[3] The First Amended Complaint purports to assert discrimination claims under the New Jersey Law Against Discrimination (as to Buckley and Davis); Maryland Fair Employment Practices Act (as to Di Fonzo and Welsh); Florida Civil Rights Act (as to Du Bois III); Michigan's Elliott Larsen Civil Rights Act (as to Martin); Pennsylvania Human Relations Act (as to Ninehouser); and Nevada Fair Employment Practices Act (as to Smith). (Am. Compl. ¶¶

(Am. Compl. ¶¶ 175-251); eliminated the cause of action under the NYCHRL; alleged recordkeeping violations under the FLSA (*id.* ¶ 160); added allegations regarding their ERISA claims (*id.* ¶¶165-66, 171-72); and asserted breach of contract claims as purported third-party beneficiaries of Defendant's benefit plans.[4]  (*Id.* ¶¶ 252-58.)

Because it is clear that all of the claims in the First Amended Complaint fall within the broad arbitration clauses of Plaintiffs' Agreements with the NFL, Plaintiffs should be required to comply with the terms of their Agreements, and this Court should compel arbitration of their claims.

## ARGUMENT

I. **PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THEIR CLAIMS.**

    A. **This Dispute Is Governed by the Federal Arbitration Act**

The arbitrability of Plaintiffs' claims is governed by the FAA, which applies to all contracts involving interstate commerce, subject to certain exceptions that are not applicable in this case.  9 U.S.C. § 1 *et seq*.  "Interstate commerce" is construed broadly, and clearly governs an employer's business that is national in scope, as is the case here.  *Allied-Bruce Terminix Cos.*

---

175-182, 190-197, 203-211, 212-219, 226-233, 238-244).  Plaintiffs also now allege that Defendant violated the provisions regarding wage notices, wage statements, and/or recordkeeping of certain state wage-and-hour statutes (*e.g.,* the New Jersey State Labor Laws by Buckley and Davis; the Maryland Code Labor and Employment § 3-501 *et seq*. by Di Fonzo and Welsh; Michigan Compiled Laws § 408.471 *et seq*. by Martin; Pennsylvania Code § 231.1 *et seq*. by Ninehouser; and Nevada Revised Statutes § 608.005 *et seq*. by Smith). (Am. Compl. ¶¶ 183-89, 198-202, 220-25, 234-37, 245-51.)

[4] Much like the Original Complaint, the First Amended Complaint alleged a number of claims that fail at the pleading stage and should be dismissed, including: (i) the state law discrimination claims brought by Plaintiffs Du Bois III, Ninehouser, Di Fonzo, Welsh and Smith (COAs 10, 12, 15, 17) because Plaintiffs did not exhaust their administrative remedies with the respective state agencies before filing the instant lawsuit; (ii) all Plaintiffs' claims for recordkeeping, wage notice and/or wage statement violations under the FLSA and state wage-and-hour laws (COAs 4, 5, 9, 11, 14, 16, 18) because the respective statutes do not provide for private rights of action for such claims and/or Plaintiffs failed to exhaust the requisite administrative remedies; (iii) all of Plaintiffs' ERISA causes of action (COAs 6, 7) because the claims are still time-barred and Plaintiffs failed to exhaust their administrative remedies; and (iv) all Plaintiffs' newly-asserted breach of contract claims as purported third-party beneficiaries of Defendant's benefit plans (COA 19) because they are preempted by ERISA.  While Defendant is not required to answer or otherwise respond to the Complaint at this time (Dkt. 23), Defendant affirms its intent to move to dismiss some or all of Plaintiffs' deficient claims before this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) in the event Defendant's motion to compel arbitration is denied in whole or in part; and if the motion to compel arbitration is granted, Defendant reserves its right to move to dismiss such claims in the arbitral forum.

*v. Dobson*, 513 U.S. 265, 273-74 (1995); *see also Graphic Scanning Corp. v. Yampol*, 850 F.2d 131, 133 (2d Cir. 1988) (concluding that FAA applies where employer operated in several states). Plaintiffs alleged in the Complaint that the NFL's business involves interstate commerce, and that Plaintiffs furnished services under their Agreements with the NFL in different states throughout the country. (Am. Compl. ¶¶ 23, 25, 27, 29, 32, 34, 36, 38, 40, 157.) Consequently, the FAA governs this motion to compel arbitration.

### B.     The Federal Arbitration Act Requires Arbitration of Plaintiffs' Claims

This motion is governed by Section 4 of the FAA, which provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Under the FAA, "a written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be *valid, irrevocable, and enforceable*, save upon grounds as exist at law or in equity for the revocation of any contract." *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-129 (2001) (quoting 9 U.S.C. § 2) (internal quotation marks omitted; emphasis added). The FAA, and the strong federal policy favoring arbitration that it embodies, "requires courts rigorously to enforce arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. __, 200 L. Ed. 2d. 889 (2018) (internal quotation and citation omitted). *See also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (discussing the "liberal federal policy favoring arbitration" under the FAA); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("This policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes.") (alteration and citation omitted).

6

The FAA, "[b]y its terms … leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); 9 U.S.C. §§ 3, 4.  The law is clear that arbitration clauses are to be construed as broadly as possible, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Thus, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 653 (1986) (citation omitted).

In deciding a motion to compel arbitration, courts consider the following factors through the lens of the strong policy favoring arbitration: (i) whether the parties have agreed to arbitrate their disputes; (ii) whether the scope of that agreement encompasses the plaintiffs' claims; (iii) if statutory claims are asserted, whether the legislature intended such claims to be non-arbitrable; and (iv) if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration.  *See Salzano v. Lace Entm't.*, No. 13-cv-5600 (LGS), 2014 WL 3583195, at *2 (S.D.N.Y. July 18, 2014) (Schofield, J.) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)).  Here, application of these factors compels arbitration of all the claims pled in the Complaint.

### 1. The Parties Entered into Valid and Enforceable Agreements to Arbitrate.

Each Plaintiff unquestionably entered into a valid and enforceable written contract with the NFL in which he agreed to arbitrate "any dispute" related to the Agreement or his services.

(Bloom Decl., Exs. A through I, ¶ 18(e).)  Each Plaintiff signed the Agreement, agreeing to be bound by all terms set forth in the Agreement, including the mandatory arbitration provision. (Bloom Decl., Exs. A through I.)  *See Salzano*, 2014 WL 3583195, at *2 (holding that signing a similarly-phrased arbitration clause to the arbitration provision in the Agreement here constituted a "clear, explicit and unequivocal agreement to arbitrate.") (internal quotations and citation omitted); *see also, e.g., Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (under New York law, a person "who signs or accepts a written contract … is conclusively presumed to know its contents and to assent to them.").  Given these facts, there can be no legitimate contention that each Plaintiff knowingly and voluntarily entered into a valid and enforceable agreement to arbitrate with the NFL.

### 2. *Plaintiffs' Agreements to Arbitrate Encompass the Claims in the Complaint.*

The arbitration clause in the Agreement, which provides for arbitration of "*any dispute arising out of or related to this Agreement or the services performed by Consultant pursuant to this Agreement . . . .*" (Bloom Decl., Exs. A through I, ¶ 18(e) (emphasis added), is "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability" of all claims.  *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (characterizing clause providing for arbitration of "any controversy or claim between [the parties] arising out of or relating to the Agreement" as "classically broad") (citations omitted).

All of the claims asserted in Plaintiffs' Complaint fall squarely within the broad scope of the arbitration provision in the Agreements.  Specifically, Plaintiffs allege that: (i) their contracts with the NFL were terminated due to alleged age discrimination under federal and state laws; (ii) they were misclassified as independent contractors under federal and state laws; (iii) Defendant failed to keep proper records and provide wage notices, wage statements, and/or

8

spread-of-hours compensation in accordance with federal and state law; and (iv) they were deprived of employee benefits under the FLSA, ERISA, and in breach of Defendant's benefit plans.  These allegations arise out of and relate to the terms of Plaintiffs' Agreements with the NFL, which address the services that Plaintiffs provided pursuant to those Agreements, the NFL's termination of the Agreements, as well as state that Plaintiffs are independent contractors.

Courts addressing arbitration provisions with language similar to the provision in the Agreements here have consistently held that the "broad" language evinces the parties' intent to arbitrate an array of disputes, including claims arising under employment statutes.  *See, e.g., Salzano*, 2014 WL 3583195, at *2-3 (holding that the "broad" arbitration provision requiring the arbitration of "all disputes" "covers all claims, including FLSA and NYLL claims."); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (holding that ADEA claims were arbitrable under provision requiring arbitration of "any dispute, claim or controversy" including "any controversy… arising out of the employment or termination of employment of such registered representative"); *Powers v. Fox Television Stations, Inc.*, 923 F. Supp. 21, 23 (S.D.N.Y. 1996) (granting motion to compel arbitration of age discrimination claims brought under state law where the arbitration clause covered "[a]ll disputes and controversies of every kind and nature arising out of or in connection with this agreement."); *see also Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 541 (E.D.N.Y. 2016) (holding that FLSA and NYLL claims, premised upon the allegations that plaintiff was misclassified as an independent contractor, clearly "arose out of" and "relates to" the services performed by plaintiff and fell within the scope of the broad arbitration clause); *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 497-98, 500 (S.D.N.Y. 2013) (holding that broad arbitration clauses, like the clauses in this case, cover "statutory claims even if the 'clause at issue does not mention [the specific] statutes

or statutes in general'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 615 (1985)).

Moreover, Plaintiffs' claims also relate to and "touch[] upon" matters that are discussed in the Agreements.  *See Salzano*, 2014 WL 3583195, at *3.  In *Salzano*, for example, this Court held that an arbitration clause requiring the arbitration of "all disputes" encompassed plaintiff's claims for unpaid wages under the FLSA and NYLL—which were premised upon the allegation that he was misclassified as an independent contractor—because the claims implicated subjects discussed in the parties' contract, including plaintiff's compensation and his status as an employee.  *Id.* at *3; *see also Ouedrago v. A-1 Int'l Courier Serv., Inc.*, No. 12-cv-5651 (AJN), 2014 WL 1172581, at *2-3 (S.D.N.Y. Mar. 21, 2014) (agreement to arbitrate "any dispute" "relating to" the parties' contract encompassed FLSA and NYLL claims because plaintiff's wages and classification as an independent contractor were expressly addressed in the underlying contract).  Similarly here, Plaintiffs' allegations of misclassification and wrongful termination of their contracts touch upon matters covered by their contracts with the NFL, as their Agreements expressly discuss their classification and compensation as independent contractors, the services they provided as independent contractors and their disclaimer of entitlement to employee benefits.  (Bloom Decl., Exs. A through I, ¶¶ 1, 5, 13.)  As a result, all of Plaintiffs' claims fall within the scope of their agreements to arbitrate.

### 3.    *Plaintiffs' Statutory Claims are Arbitrable.*

A final factor courts consider when deciding a motion to compel arbitration in the context of statutory claims, is whether the statutory language or legislative history evinces the legislature's intent to foreclose arbitration of those claims.  *Gilmer*, 500 U.S. at 26; *Salzano*, 2014 WL 3583195, at *2.  Under such circumstances, it is the party opposing the motion to

compel arbitration that has the burden to establish the requisite legislative intent that the claims are non-arbitrable. *Gilmer*, 500 U.S. at 26; *Salzano*, 2014 WL 3583195, at *3.

Plaintiffs cannot meet this burden here. Courts have consistently held that the federal statutory claims asserted in the Complaint are arbitrable. *See, e.g., Gilmer*, 500 U.S. at 35 (ADEA claims); *Epic Sys. Corp*, 584 U.S. at __, 200 L. Ed. 2d 889 (FLSA claims), *Rodriguez-Depena v. Parts Auth.*, 877 F.3d 122, 123 (2d Cir. 2017), *cert. denied*, No. 17-1494, 2018 WL 2046393 (June 11, 2018) (FLSA claims); *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 118-22 (2d Cir. 1991) (ERISA claims); *Murphy v. Canadian Imperial Bank of Commerce*, 709 F. Supp. 2d 242, 243, 247 (S.D.N.Y. 2010) (same). Likewise, district courts have routinely compelled arbitration of claims alleged under the state statutes at issue here.[5]

Accordingly, the Court should grant Defendant's motion to compel arbitration because (i) Plaintiffs each have a valid and enforceable agreement to arbitrate disputes arising out of or relating to their Agreements or the services they provided as SRs; (ii) the scope of the parties' "broad" arbitration clauses encompass all of Plaintiffs' claims pled in the Complaint; and (iii) Plaintiffs' statutory claims are arbitrable.

---

[5] *See Thomas*, 957 F. Supp. 2d at 496, 497-98, 500 (NYSHRL claims); *Ekryss v. Ignite Rest. Grp., Inc.*, No. 15-cv-6742 (CJS), 2016 WL 4679038, at *1 (W.D.N.Y. Sept. 7, 2016) (FLSA and claims under the wage-and-laws of New York, Florida, Pennsylvania, and Michigan); *Spencer v. CVS*, No. 16-cv-7593 (RBK) (AMD), 2017 WL 1293980, at *1 (D.N.J. Apr. 5, 2017) (New Jersey Law Against Discrimination claims); *Ranieri v. Banco Santander, S.A.*, No. 15-cv-3740, 2017 WL 374468, at *6 (D.N.J. Jan. 25, 2017) (New Jersey Wage and Hour Law and FLSA claims); *Zeller-Landau v. Sterne Agee CRT, LLC*, No. 17-cv-3962, 2018 WL 334970, at *5 (E.D. Pa. Jan. 9, 2018) (Pennsylvania Human Relations Act claims); *Brown v. TrueBlue, Inc.*, No. 1:10-cv-0514, 2011 WL 5869773, at *1, 8 (M.D. Pa. Nov. 22, 2011) (Pennsylvania Minimum Wage Act and Pennsylvania Wage Payment and Collection Law claims); *Williams v. Dearborn Motors 1, LLC*, No. 17-cv-12724, 2018 WL 2364051, at *2, 7 (E.D. Mich. May 24, 2018) (Michigan's Elliott-Larsen Civil Rights Act claims); *Grant v. Morgan Stanley Smith Barney LLC*, No. 16-cv-81924, 2017 WL 1044484, at *4 (S.D. Fla. Mar. 20, 2017) (Florida Civil Rights Act claims); *Braithwaite v. Edgewood Mgmt. Corp.*, No. 12-cv-3769 (WDQ), 2014 WL 69107, at *1 (D. Md. Jan. 7, 2014) (Maryland Fair Employment Practices Act claims); *Johnson v. CRC Holdings, Inc.*, No. 16-cv-2937 (JKB), 2017 WL 914998, at *5 (D. Md. Mar. 8, 2017) (Maryland Wage Payment Collection Law claims); *Echevarria-Hernandez v. Affinitylifestyles.com, Inc.*, No. 2:16-cv-00943 (GMN) (VCF), 2017 WL 1160571, at *5 (D. Nev. Mar. 27, 2017) (Nevada Fair Employment Practices Act claims); *Hanks v. Briad Rest. Grp., L.L.C.*, No. 2:14-cv-00786 (GMN), 2015 WL 4562755, at *6 (D. Nev. July 27, 2015) (wage claims asserted under Nevada Revised Statutes § 608.005 *et seq.*).

## II. THE COURT SHOULD ENTER A STAY DURING THE PENDENCY OF THE ARBITRATION PROCEEDINGS.

Section 3 of the FAA provides for a mandatory stay of court proceedings when "all of the claims in an action have been referred to arbitration and a stay [is] requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).  *See also Virk v. Maple-Gate Anesthesiologists, P.C.*, 657 F. App'x 19, 20-21 (2d Cir. 2016).  Here, all of Plaintiffs' claims must be submitted to arbitration in accordance with each Plaintiff's express agreement to arbitrate "all disputes."  Thus under the FAA, a stay of this action is warranted pending the outcome of the arbitration proceedings.  *See Katz*, 794 F.3d at 347; *Salzano*, 2014 WL 3583195, at *5.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion to compel arbitration and stay this action, and all other relief that the Court may deem just and proper.

Dated: New York, New York
July 24, 2018

          PROSKAUER ROSE LLP

By:   */s/ Elise M. Bloom*

ELISE M. BLOOM
RUSSELL L. HIRSCHHORN
NOA M. BADDISH
JOSHUA S. FOX
Eleven Times Square
New York, NY 10036
(212) 969-3000
(212) 969-2900

*Attorneys for Defendant
The National Football League*