UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES BUCKLEY, RODNEY DAVIS, MARIO DI FONZO, EDWARD L. DU BOIS, III, DON FUHRMAN, WALTER MARTIN, MARK NINEHOUSER, JOHNNY SMITH, and RICHARD WELSH,<br><br>Plaintiffs,<br><br>-against-<br><br>THE NATIONAL FOOTBALL LEAGUE,<br><br>Defendant. | Case No. 18-CV-3309 (LGS)<br><br>**DECLARATION OF JAMES BUCKLEY** |

I, James Buckley, declare that the following statements are true to the best of my knowledge, information and belief:

1. My name is James Buckley and I am a plaintiff in this action. I respectfully submit this declaration in opposition to the National Football League's ("NFL") motion to compel arbitration. I make this declaration based on my personal knowledge.

2. By way of background, I have been a licensed private investigator in New Jersey since 1997. I recently turned 74 years old and was 73 when the NFL wrongfully terminated my employment. I have a Bachelor of Science degree in Public Safety Administration and a Master of Arts degree in Urban Education and Community Affairs. For 30 years, I was a law enforcement officer with the Paterson, New Jersey Police Department, retiring as Captain of Detectives in the Major Crimes squad. For several years during this period of time, I had also been assigned as a Task Force Supervisor with the United States Drug Enforcement Administration (New Jersey Division). Post retirement, I was hired in a civilian capacity as the Programs Manager (GS-13) for the New Jersey

Division of DEA. I reported directly to the Special Agent in Charge and was responsible for developing short, mid and long-term initiatives (Field Management Plan) as it related to mid and high level narcotic traffickers in New Jersey and elsewhere. Further, I liaised with staff in our DEA Headquarters (Washington, DC) as well as various law enforcement entities both local and throughout the United States. I held a Top Secret clearance during that period of employment. I have a Secret Clearance from the Department of Homeland Security.

3. Plaintiffs commenced this case to redress the NFL's violations of federal and state labor laws and laws prohibiting age discrimination in employment. Over the course of my 17-year tenure with the NFL, James R. Buckley Associates, of which I was the sole member, I entered into several virtually identical "Security Representative Consulting Agreements" (the "Agreements") with the NFL in which I, as the "key person"¹ under those Agreements, agreed to provide a host of investigative and security services. I understand that the NFL is trying to force me and my co-plaintiffs to arbitrate our claims asserted in our amended complaint. In doing so, the NFL relies on a provision located in the "Miscellaneous" section at the very end of the Agreements.

4. There are several reasons why these arbitration provisions are unenforceable. First, my employment-based claims do not arise under the Agreements which, by their terms, purport to establish an independent contractor relationship. My claims arise outside of the Agreements. Second, the NFL induced me to sign the Agreements based on the knowingly false representation that I am an independent contractor, not an employee. It is absurd to say that by signing the Agreements on behalf of my corporation that I personally agreed to arbitrate claims for age discrimination and violations of federal and state labor laws. This is particularly true because the NFL deliberately failed to enumerate in the arbitration provisions what claims were

---

¹ The Agreements provide that my "personal services are the essence of the Agreement" and defines me to be a "key person" on that basis.

subject to arbitration. I believe that, in this respect, the NFL was intentionally hiding the ball for fear that referencing statutory claims in the arbitration provisions would constitute some kind of admission that I had such rights, or at least would put me on notice that I might have statutory claims and other claims and entitlements available to employees, but not to independent contractors.

5. I know now that despite the NFL's representation that I was an independent contractor, not an employee, I was in fact a long-term employee of the NFL with rights that go well beyond the right to the contractually agreed compensation. I am advised that if I prevail on my statutory claims I would be entitled to recover my attorneys' fees. By signing the Agreements on behalf of my corporation, I did not agree to waive rights that the NFL misrepresented I do not have. In executing the Agreements on behalf of my Corporation with the NFL, I had no intention to waive any claims that I would have as an employee, including the statutory claims that I assert in this action. In short, the NFL defrauded me into signing the Agreements and arbitration provisions by misrepresenting my status as an employee.

6. Third, the NFL is playing a game of "heads I win, tails you lose," claiming on the one hand that I am an independent contractor without any of the rights afforded to employees, while at the same time claiming that I agreed to arbitrate age discrimination and labor law claims that the NFL represented I do not have. I did not, and could not have, made any such agreement.

7. I was employed by the NFL for 17 years during which I was assigned to the New York Giants at MetLife Stadium in East Rutherford, New Jersey. My employment was terminated last July based on my age.

### The NFL Represented That I Am An Independent Contractor

8. As previously noted, over the course of my tenure with the NFL, James R. Buckley Associates, of which I was the sole member, entered into several virtually identical "Security Representative Consulting Agreements" with the NFL under which I agreed to provide investigative and security services. Paragraph 12 of the Agreements provide that Consultant will furnish his services as "an independent contractor, and not as an employee of the NFL...." Paragraph 12 further states that, as an independent contractor, "Consultant is not entitled receive pension, welfare, health, vacation, sick leave or any other type of benefits or compensation" and that "Consultant is not entitled to any medical coverage, life insurance, participation in the NFL's savings plan, or other benefits afforded to the NFL's employees, or those of the NFL's affiliated companies." On the basis of these statements in the Agreements, I understood the NFL to be representing to me that I am not its employee and, therefore, had no rights as an employee of the NFL.

9. I relied on the NFL's representation of my status as an independent contractor under the Agreements and my reliance was more than reasonable. As an employer, the NFL is required to know the laws applicable to the classification of independent contractors and employees. It has superior knowledge to me regarding classification. And, at the time, I had no reason to believe that the NFL was falsely representing my status to induce me to sign Agreements that include, among other thing, the arbitration clauses.

10. The arbitration provision which appears on the last page of the Agreements under "Miscellaneous" provides in relevant part that "any dispute arising out of or related to this Agreement or the services performed by Consultant pursuant to this Agreement shall be referred to final and binding arbitration pursuant to the procedures of the American Arbitration Association. The arbitration shall be conducted in accordance with the American Arbitration

Association Rules. * * * Each party shall pay an equal share of the arbitrator's fees and expenses and shall bear its own attorneys' fees, witness fees and other costs concerning the arbitration."

11. Given the NFL's repeated statements that I am not an employee and am instead an independent contractor, I had no expectation that I would be waiving or agreeing to arbitrate any employment claims with the NFL when I caused my corporation to sign the Agreements, including my right to recover my attorneys' fees if I prevail on my statutory claims.

### **The NFL Misrepresented My Status As An Independent Contractor**

12. The original and amended complaints filed by plaintiffs detail the duties and responsibilities performed by SRs, which include game day responsibilities during football season. Throughout the year, the NFL may call upon us to conduct security inspections, Rx drug audits, background checks and confidential investigations, stadium best practices for security reviews, special events and more. It is the SRs who are the "eyes and ears of the NFL" on the field and in the stadium.

13. Rather than reiterate every single allegation in the amended complaint that establish plaintiffs' status as employees, I incorporate the allegations in paragraphs 45, 48-57, and 61-67 of the amended complaint into this declaration, verify their truth, and provide a short summary of the facts establishing that, in all respects, the NFL had the right to control, direct and supervise me and the other SRs.

14. Paragraph 1 in all of the Agreements specify the services to be performed, which include: (a) Game Day Security Services; (b) Security Services for Players, Member Club and League Personnel; (c) Information Services; (d) Training Day Services; (e) Investigative

Services; (f) Liaison Services; (g) Event Security Services; and (h) Training Services. In each instance, the Agreements specify the tasks to be performed under each category of service.

15. The "NFL Best Practices for Stadium Security" specifies the tasks that I was required to perform on game days, and it also dictates the way in which I (and all of the security representatives) are required to perform them.

16. The NFL Best Practices for Stadium Security Inspections required that I conduct periodic inspections of assigned football stadiums and dictates the manner in which the inspections are to be performed.

17. The NFL assigned me to conduct "Rx Drug Audits" and dictated the manner in which the audits were to be performed.

18. The NFL assigned me to conduct "Fair Competition Inspections" and dictated the manner in which the inspections were to be performed.

19. The NFL dictated how I was to conduct Ball Inflation Inspections, and the manner in which I was required to perform them.

20. Even with respect to confidential investigations, I had little to no autonomy or discretion as to the manner in which they performed their services. For example, when assigning investigations, the NFL dictated the investigative steps to be taken, rather than permittin me to exercise discretion to choose which steps I believed should be taken to accomplish the investigative goal.

21. The NFL required me to participate in training sessions, as and when directed.

22. The NFL required me to comply with its general policies.

23. The NFL required me to submit to, and pass, background checks.

6

24. The NFL dictated the apparel that I could and could not wear when doing NFL business.

25. The NFL dictated the manner in which I was required to conduct myself when doing NFL business.

26. The NFL provided identification cards to me that bear the NFL logo and identified me as a representative of the NFL.

27. The NFL paid for the equipment utilized by me in performing my duties.

28. The NFL reimbursed me personally for my expenses.

29. With respect to investigations, the NFL directed what type and model of tape recorder I was required to purchase and use for conducting interviews. The NFL reimbursed me the cost of the tape recorder.

30. I was required to book NFL-related travel through the NFL. When traveling on NFL business, I received a per diem rate of expenses for meals with tip amounts allowable per meal.

31. The services that I provided are services that the NFL is required to provide.

**The Arbitration Provisions Are Not Enforceable**

32. In the first instance, my wage and hour claims and claims for age discrimination do not arise under the Agreements, which purport to establish an independent contractor relationship. Nor do my claims relate to the services performed for the NFL pursuant to the Agreements. My claims arise outside of the Agreements.

33. The NFL induced me to sign the Agreements on behalf of my corporation based on the knowingly false representation that I, through my corporation, am an independent contractor, not an employee. The arbitration provisions do not state that statutory claims are

subject to arbitration and I did not agree to arbitrate claims for age discrimination and violations of federal and state labor laws.

34. The arbitration clauses provide that the parties will bear their own costs of arbitration and their own attorneys' fees. If I truly were an independent contractor with no rights other than to be paid in accordance with the Agreements, I would not be giving up anything by agreeing to bear my own attorneys' fees or forego punitive damages. But the NFL misrepresented my status. I am aware that if I prevail on my statutory claims I would be entitled to recover my attorneys' fees and punitive damages. I did not agree to waive rights that the NFL misrepresented I do not have.

35. The NFL's claim on the one hand that I am an independent contractor without any of the rights afforded to employees, while at the same time claiming that I agreed to arbitrate age discrimination and labor law claims that the NFL represented I do not have, is ridiculous. I did not, and could not have, made any such agreement. Respectfully, the NFL should not benefit from its fraud by depriving me and my co-plaintiffs the right to have our claims heard in court by a judge and jury and to recover attorneys' fees in the event we prevail on our statutory claims.

36. For the foregoing reasons, I request that the Court deny the NFL's motion to compel arbitration.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Wanaque, New Jersey
August 29, 2018