ELISE M. BLOOM
RUSSELL L. HIRSCHHORN
NOA M. BADDISH
JOSHUA S. FOX
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000
(212) 969-2900

*Attorneys for Defendant*
*The National Football League*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| JAMES BUCKLEY, RODNEY DAVIS, MARIO DI FONZO, EDWARD L. DU BOIS, III, DON FUHRMAN, WALTER MARTIN, MARK NINEHOUSER, JOHNNY SMITH, and RICHARD WELSH | 18-cv-03309 (LGS) |
| | **ECF CASE** |
| Plaintiffs, | |
| -against- | |
| THE NATIONAL FOOTBALL LEAGUE, | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ....................................................................................................... 1

I.      PLAINTIFFS' ARBITRATION AGREEMENTS ARE ENFORCEABLE ...................... 1

        A.      Plaintiffs' Fraud Allegations Are Insufficient To Defeat Defendant's
                Motion ....................................................................................... 2

                1.      Plaintiffs' Fraudulent Inducement Claim Should Be Decided by the
                        Arbitrator ..................................................................... 2

                2.      Representations that Plaintiffs Were Independent Contractors, Not
                        Employees, Do Not Invalidate Their Arbitration Provisions ................ 3

                3.      Plaintiffs Have Not Met Their Burden of Establishing Fraud
                        Necessary To Invalidate Their Arbitration Agreements ...................... 3

                4.      The Arbitration Provisions Were Prominently Displayed in the
                        Agreements .................................................................... 5

        B.      Plaintiff Buckley's Arbitration Agreement Is Enforceable Under
                Applicable Law ............................................................................. 6

        C.      Plaintiffs Buckley, Davis, DuBois and Martin Are Bound by the
                Agreements They Signed ................................................................. 7

II.     THE BROAD ARBITRATION CLAUSES ENCOMPASS PLAINTIFFS'
        CLAIMS ...................................................................................................... 8

III.    PLAINTIFFS CAN EFFECTIVELY VINDICATE THEIR STATUTORY
        CAUSES OF ACTION IN ARBITRATION .......................................................... 9

CONCLUSION ..................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arnold v. D'Amato*,
2015 WL 4503533 (S.D.N.Y. July 23, 2015) ..........................................................................5

*Brink v. Union Carbide Corp.*,
41 F. Supp. 2d 402 (S.D.N.Y. 1997), *aff'd*, 210 F.3d 354 (2d Cir. 2000) ...............................4

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018).............................................................................................................6

*Ferguson v. Ferrante*,
664 F. App'x 58 (2d Cir. 2016) ...............................................................................................3

*Fishman v. Phila. Fin. Life. Assurance Co.*,
2016 WL 2347921 (S.D.N.Y. May 3, 2016) ...........................................................................7

*Florence Corp. v. Penguin Constr. Corp.*,
642 N.Y.S.2d 697 (1996)..........................................................................................................7

*Gonzalez v. Toscorp Inc.*,
1999 WL 595632 (S.D.N.Y. Aug. 5, 1999)............................................................................7, 8

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000).....................................................................................................................9

*Haight v. NYU Langone Med. Ctr., Inc.*,
2016 WL 29628 (S.D.N.Y. Jan. 4, 2016) ...............................................................................4

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*,
230 F.3d 549 (2d Cir. 2000).......................................................................................................7

*HDI Glob. SE v. Lexington Ins. Co.*,
232 F. Supp. 3d 595 (S.D.N.Y. 2017).......................................................................................3

*Herrera v. Katz Commc'ns., Inc.*,
532 F. Supp. 2d 644 (S.D.N.Y. 2008).......................................................................................9

*Housekeeper v. Lourie*,
39 A.D.2d 280 (1st Dep't 1972) ...............................................................................................2

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
698 F.3d 58 (2d Cir. 2012)........................................................................................................2

*Klein v. ATP Flight Sch., LLP*,
    2014 WL 3013294 (E.D.N.Y. July 3, 2014)................................................................3

*Kutluca v. PQ N.Y. Inc.*,
    266 F. Supp. 3d 691 (S.D.N.Y. 2017)......................................................................1

*Laduzinski v. Alvarez & Marsal Taxand LLC*,
    132 A.D.3d 164 (1st Dep't 2015) ...........................................................................5

*Lapina v. Men Women N.Y. Model Mgmt., Inc.*,
    86 F. Supp. 3d 277 (S.D.N.Y. 2015)........................................................................5

*Manley v. AmBase Corp.*,
    126 F. Supp. 2d 743 (S.D.N.Y. 2001), *aff'd*, 337 F.3d 237 (2d Cir. 2003) ..............5

*Mehler v. Terminix Int'l Co. L.P.*,
    205 F.3d 44 (2d Cir. 2000).......................................................................................8

*Merrill Lynch Int'l Fin., Inc. v. Donaldson*,
    895 N.Y.S.2d 698 (Sup. Ct. 2010)...........................................................................8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..................................................................................................6

*Moon v. Breathless, Inc.*,
    868 F.3d 209 (3d Cir. 2017).....................................................................................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)......................................................................................................8

*Moton v. Maplebear Inc.*,
    2016 WL 616343 (S.D.N.Y. Feb. 9, 2016)..............................................................3

*Navaretta v. Group Health, Inc.*,
    191 A.D.2d 953 (3d Dep't 1993)..............................................................................5

*Oldroyd v. Elmira Savings Bank, FSB*,
    134 F.3d 72 (2d Cir. 1998).......................................................................................8

*Ouedraogo v. A-1 Int'l Courier Serv., Inc.*,
    2014 WL 1172581 (S.D.N.Y. Mar. 21, 2014) .....................................................3, 8

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
    991 F.2d 42 (2d Cir. 1993).......................................................................................6

*Raw v. Bank of N.Y. Mellon Corp.*,
    2010 WL 4236941 (E.D.N.Y. Oct. 21, 2010)..........................................................6

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ............................................................................................................2

*Reyes v. Gracefully, Inc.*,
    2018 WL 2209486 (S.D.N.Y. May 11, 2018) ...........................................................9

*Salzano v. Lace Entm't*,
    2014 WL 3583195 (S.D.N.Y. July 18, 2004) ..............................................5, 8, 9, 10

*Valley Nat'l Bank v. Oxygen Unlimited, LLC*,
    2010 WL 5422508 (S.D.N.Y. Dec. 23, 2010) ...........................................................3

*Zambrano v. Strategic Delivery Sols., LLC*,
    2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016) ...........................................................9

**STATUTES**

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* ..............................................2, 6

**OTHER AUTHORITIES**

https://www.adr.org/sites/default/files/document_repository/Employment%20Due
    %20Process%20Protocol_0.pdf ...............................................................................10

https://www.adr.org/sites/default/files/Employment%20Rules.pdf .............................10

Local Civil Rule 7.1 ................................................................................................1, 4

<u>**PRELIMINARY STATEMENT**</u>

Each of the nine Plaintiffs signed broad arbitration agreements that cover *all* of their alleged claims in this case.  Defendant National Football League ("Defendant" or the "NFL") moved to compel arbitration of those claims in accordance with well-established legal precedent from the Supreme Court and the Second Circuit.  Plaintiffs have provided no case law to support departing from this settled precedent, nor could they, because there is no authority that warrants denial of Defendant's motion.

Instead, Plaintiffs attempt to divert attention away from the one issue currently before the Court—whether to compel arbitration—and devote the majority of their opposition papers to arguing the merits of their underlying claim that they allegedly were misclassified as independent contractors.  Plaintiffs suggest that their arbitration agreements are unenforceable because they were "fraudulently induced" to enter into their contracts with the NFL based on the purported misrepresentation that they were independent contractors and not employees.  The only support Plaintiffs proffer for this alleged fraud are nearly identical declarations that parrot legal terms of art and otherwise contain conclusory statements.  These statements in their declarations violate Local Rule 7.1 and should be disregarded.  And to the extent that their declarations contain any facts at all, as set forth herein, those facts indeed bolster *Defendant's motion* because the declarations demonstrate that Plaintiffs are well-educated, experienced professionals and undermine any implication that they were misled about their status.  Regardless, any dispute about the merits of Plaintiffs' claims does not provide a basis to invalidate their arbitration agreements and should be decided in arbitration.  Consistent with the strong public policy favoring arbitration, Defendant's motion should be granted.

<u>**ARGUMENT**</u>

**I.     PLAINTIFFS' ARBITRATION AGREEMENTS ARE ENFORCEABLE**

It is *Plaintiffs'* burden to demonstrate that their arbitration agreements are unenforceable. *See Kutluca v. PQ N.Y. Inc*., 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) (the "party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the

agreement to be inapplicable or invalid.") (citation omitted).  Plaintiffs have not met their burden.

In an unavailing attempt to circumvent their contractual obligation to arbitrate, Plaintiffs suggest that the arbitration provision in each of their Security Representative Consulting Agreements (the "Agreements") is unenforceable because: (i) the Agreements were allegedly fraudulently induced; (ii) as to Plaintiff Buckley only, New Jersey law displaces the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* and renders his arbitration agreement invalid; and (iii) Plaintiffs Buckley, Davis, DuBois and Martin executed their Agreements in their capacity as corporate officers of their investigation companies and are not technically "signatories" to the Agreements.  These arguments each lack merit, as explained below.

### A.  Plaintiffs' Fraud Allegations Are Insufficient To Defeat Defendant's Motion

#### 1.  *Plaintiffs' Fraudulent Inducement Claim Should Be Decided by the Arbitrator*

Plaintiffs contend that their arbitration provisions are not enforceable because they were fraudulently induced to enter into the Agreements based on the purported "misrepresentation" that Plaintiffs were independent contractors, not employees.  As an initial and dispositive matter, because Plaintiffs allege that they entered into their Agreements—as a whole—as a result of the alleged fraud, Supreme Court precedent mandates that their claims of fraudulent inducement must be decided by the arbitrator, not the Court.  *See, e.g., Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010); *see also Ipcon Collections LLC v. Costco Wholesale Corp*., 698 F.3d 58, 61 (2d Cir. 2012) (the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally").[1]

---

[1] Plaintiffs cite to *Housekeeper v. Lourie*, 39 A.D.2d 280, 280-84 (1st Dep't 1972) for the proposition that their arbitration agreements are not enforceable because the Agreements were procured by alleged fraud.  In *Housekeeper*, however, the New York Appellate Division, First Department, explicitly recognized fraudulent inducement of the principal contract does *not* nullify an agreement to arbitrate contained therein under the FAA, which is the body of law that indisputably governs Defendant's motion.  *Id.* at 284.

      **2.**       ***Representations that Plaintiffs Were Independent Contractors, Not Employees, Do Not Invalidate Their Arbitration Provisions***

Even if the Court were to entertain Plaintiffs' suggestion that they only agreed to arbitrate because their Agreements represented that they were independent contractors, instead of employees, the arbitration provisions in their respective Agreements are still enforceable.  Courts routinely compel arbitration of employment-law claims in cases involving independent contractors who allege they were misclassified, even though they entered into agreements that disclaimed employment relationships.  *See, e.g., Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, 2014 WL 1172581, at *2-3 (S.D.N.Y. Mar. 21, 2014) (compelling arbitration of independent contractor's FLSA and NYLL claims and rejecting argument that arbitration provision did not cover employment claims); *Moton v. Maplebear Inc.*, 2016 WL 616343 (S.D.N.Y. Feb. 9, 2016) (compelling arbitration of independent contractor's misclassification claims under the FLSA and NYLL.  The untested merits of Plaintiffs' misclassification claims have no bearing whatsoever on the enforceability of the arbitration provisions in their individual Agreements.  *See HDI Glob. SE v. Lexington Ins. Co.*, 232 F. Supp. 3d 595, 602 (S.D.N.Y. 2017) ("[T]he merits of a dispute must be left to the arbitrator.").

      **3.**       ***Plaintiffs Have Not Met Their Burden of Establishing Fraud Necessary To Invalidate Their Arbitration Agreements***

Plaintiffs concede that "[i]n the context of [a] motion to compel arbitration . . . the Court applies a standard similar to that applicable to a motion for summary judgment."  *HDI Glob. SE*, 232 F. Supp. 3d at 601.  This means that Plaintiffs must demonstrate, by "clear and convincing evidence," the existence of a genuine issue of disputed fact as to each element of their fraud claim.  *Valley Nat'l Bank v. Oxygen Unlimited, LLC*, 2010 WL 5422508, at *3 (S.D.N.Y. Dec. 23, 2010).  Conclusory assertions, devoid of specific factual underpinnings, will not suffice to carry this burden.  *See Klein v. ATP Flight Sch., LLP*, 2014 WL 3013294, at *3 (E.D.N.Y. July 3, 2014).[2]

---

[2] Fraudulent inducement under New York law requires:  "(1) material misrepresentation of presently existing or past fact, (2) intent to deceive, (3) reasonable reliance on misrepresentation, and (4) resulting damages."  *Ferguson v. Ferrante*, 664 F. App'x 58, 62 (2d Cir. 2016) (internal citations omitted).

Plaintiffs have failed to proffer *any* evidence establishing that their arbitration agreements were in fact procured by fraud, let alone the clear and convincing evidence necessary to satisfy their burden in opposing Defendant's motion.  They each proffer the same cookie-cutter declaration, which consists of inappropriate legal assertions and unsupported and/or irrelevant facts, that should be stricken.[3]  *See, e.g.,* Dkt. 41 ¶¶ 4-6, 8-9, 11, 32-36.  *See also, e.g., Haight v. NYU Langone Med. Ctr., Inc.*, 2016 WL 29628, at *4 (S.D.N.Y. Jan. 4, 2016) (noting that "[p]ursuant to Local Civil Rule 7.1, legal argument is to be set forth in a memorandum of law, while factual affirmations are to be set forth in affidavits" and declining to consider non-compliant declaration) (internal citations omitted); *Brink v. Union Carbide Corp.*, 41 F. Supp. 2d 402, 403-04 (S.D.N.Y. 1997), *aff'd*, 210 F.3d 354 (2d Cir. 2000) (striking plaintiff's declaration containing "conclusory assertions…and/or legal arguments or conclusions which obviously can not be looked to as raising material issues of fact").

When properly stripped of the impermissible legal arguments and unsupported conclusions, Plaintiffs' declarations boil down to a handful of statements that do not establish fraud.  If anything, the few facts in Plaintiffs' declarations, which pertain to their background and experience, undermine their fraud claims.  Plaintiffs are college-educated, capable, law enforcement professionals, several of whom even owned and operated their own security and/or investigation companies.  *See, e.g.*, Dkt. 41 ¶¶ 4-5, 9; *see also* Dkt. 28 ("Am. Compl.") ¶¶ 5, 22, 24, 26, 28, 31, 33, 35, 37, 39.  These facts contradict Plaintiffs' baseless assertions that the NFL had "superior knowledge" as to their employment status.[4]

There also can be no legitimate suggestion that each Plaintiff was not fully aware of the "facts" they now claim give rise to their purported fraud claim at the time they entered into their

---

[3] The majority of the paragraphs in the declarations should be struck or disregarded because they merely parrot the legal arguments in Plaintiffs' memorandum of law and otherwise contain conclusory allegations related to the merits of their misclassification claims that cannot establish fraud for the reasons explained above.

[4] Much of Plaintiffs' fraud argument rests on their misguided contention that the NFL "knew" it had misclassified the Security Representatives based on a prior misclassification claim from 2007 in *Richardson v. National Football League*, which involved urine testers — an indisputably separate class of individuals.  Plaintiffs do not contend that they performed the same or even similar duties as the urine testers or provide any other factual support to tie these claims together.  Accordingly, Plaintiffs do not provide any support for their argument that they NFL "knowingly" misclassified them as independent contractors.

most recent Agreement with the NFL in 2016.  *See Manley v. AmBase Corp.*, 126 F. Supp. 2d 743, 547-58 (S.D.N.Y. 2001), *aff'd*, 337 F.3d 237 (2d Cir. 2003) (dismissing fraud claim where information was available to both parties).  Indeed, Plaintiffs do *not* allege that the NFL misrepresented the services they were expected to provide.[5]  To the contrary, Plaintiffs concede that the services they performed were explicitly laid bare in the numerous "virtually identical" Agreements Plaintiffs signed over numerous years.  *See, e.g.*, Dkt. 41 ¶¶ 3, 14.

4. ***The Arbitration Provisions Were Prominently Displayed in the Agreements***

Plaintiffs also summarily assert that the arbitration provisions "demonstrate the NFL's fraud" because they are "not in bold or in all capital letters," are "effectively hid[den]…under the 'Miscellaneous' section," and lack an explicit jury trial waiver.  These allegations are insufficient to invalidate the arbitration agreements under governing case law, much less establish fraud. *See, e.g., Arnold v. D'Amato*, 2015 WL 4503533, at *4 (S.D.N.Y. July 23, 2015) (compelling arbitration of independent contractor's breach of contract claims where the provision lacked heading and was not in bold, italics or capital letters) (*see agreement at Arnold*, No. 14-cv-6457, Dkt. 10-1); *Lapina v. Men Women N.Y. Model Mgmt., Inc*., 86 F. Supp. 3d 277, 280, 288 (S.D.N.Y. 2015) (granting motion to compel where arbitration provision appeared in the untitled subsection (*l*) of the parties' contract, under a heading entitled "11. MISCELLANEOUS") (*see agreement at Lapina*, No. 14-cv-6890, Dkt. 1-2); *see also Salzano v. Lace Entm't*, 2014 WL 3583195, at *1 (S.D.N.Y. July 18, 2004) (enforcing arbitration agreement that does not contain an express jury waiver).  For all of these reasons, Plaintiffs' unsupported claims of fraud do not render their agreements to arbitrate unenforceable.

---

[5] Plaintiffs rely on *Laduzinski v. Alvarez & Marsal Taxand LLC*, 132 A.D.3d 164, 167 (1st Dep't 2015) and *Navaretta v. Group Health, Inc.*, 191 A.D.2d 953, 954 (3d Dep't 1993) in support of their fraud claim, but these cases do not involve claims of fraudulent inducement of an arbitration agreement, nor do they stand for the proposition that a party may evade their agreement to arbitrate simply by asserting conclusory allegations of fraud.

**B.**     **Plaintiff Buckley's Arbitration Agreement Is Enforceable Under Applicable Law**

Plaintiffs acknowledge that the FAA governs this motion, yet Plaintiff Buckley—alone out of the nine Plaintiffs—suggests that the Court should disregard the FAA and apply New Jersey state law (following a New York conflict-of-law analysis) in determining both the "enforceability" and "scope" of his arbitration clause.[6]  Buckley's argument fails at the outset because the law is clear that the FAA broadly preempts state law with respect to the enforceability of an arbitration provision and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 48 (2d Cir. 1993); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  Under the FAA, courts may only refuse to enforce agreements to arbitrate pursuant to generally applicable contract defenses, such as fraud, duress or unconscionability, which Buckley has failed to prove for the reasons set forth in Section I.A., *supra*.  In addition, under the FAA, the broad arbitration clause in the Agreements encompasses all of Buckley's claims.  *See Raw v. Bank of N.Y. Mellon Corp.*, 2010 WL 4236941, at *5 (E.D.N.Y. Oct. 21, 2010) (applying federal law and rejecting plaintiff's "flawed" argument that New Jersey substantive law should apply to the interpretation of the scope of his arbitration clause).[7]

To the extent state law is relevant at all, it is New York law, not New Jersey law, that is applicable to the enforceability of Buckley's arbitration agreement because the Agreement plainly states that it is to be governed by and construed in accordance with New York law.  *See* Dkt. 31-1 § 18(d).  Buckley acknowledges that the Agreement contains a New York choice-of-law provision.  Courts within this Circuit apply a presumption in favor of enforcing parties'

---

[6] The other eight Plaintiffs do not raise this argument and therefore concede that the arbitration provisions are enforceable as to their claims under whatever law they contend applies (*i.e.*, federal law, New York law and/or the laws of each Plaintiff's domiciliary state).

[7] Buckley's reliance on *Moon v. Breathless, Inc.,* 868 F.3d 209, 218 (3d Cir. 2017) is misplaced.  In *Moon*, the question of whether the FAA preempted state law as to the analysis of the scope of the arbitration provision was never presented to the court.  Rather, the parties agreed that substantive New Jersey law applied to this determination.  *Id.* at 213.  No such agreement to use New Jersey law exists in this case.  Moreover, *Moon* and the other New Jersey state court cases cited by Plaintiff were all decided before the Supreme Court's decision in *Epic*.

governing law provisions and "[a]bsent fraud or violation of public policy, a court is to apply the law selected in the contract so long as the state selected has sufficient contacts with the transactions." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000); *see also Fishman v. Phila. Fin. Life. Assurance Co.*, 2016 WL 2347921, at *9 (S.D.N.Y. May 3, 2016) ("New York courts will generally enforce a clear and unambiguous choice-of-law clause contained in an agreement.") (citation omitted).  Buckley does not argue fraud or a violation of public policy with respect to the choice-of-law provision and New York has sufficient contacts with the instant dispute.[8]

## C.   Plaintiffs Buckley, Davis, DuBois and Martin Are Bound by the Agreements They Signed

Without citing to any legal authority, Plaintiffs Buckley, Davis, DuBois and Martin summarily assert that they cannot be compelled to arbitrate their claims because they signed their Agreements in their "official capacities with respect to corporate entities that contracted with the NFL and for which those plaintiffs were designated a 'key person.'"  This argument should be flatly rejected.  It is undisputed that Buckley, Davis, DuBois and Martin each signed the Agreement in their capacity as the "Consultant," which was defined *collectively* as the respective Plaintiff, individually, *and* the company "owned and controlled" by that Plaintiff.  *See* Dkt. 31-1 at 1.  In signing the Agreements, each Plaintiff explicitly agreed that he was the "Key Person" whose "personal services are the essence of the Agreement."  *Id.*  In light of the plain language of the Agreements, it is clear that Plaintiffs manifested their intent to be bound in both their individual *and* corporate capacities.  *See Florence Corp. v. Penguin Constr. Corp.*, 642 N.Y.S.2d 697 (1996) (where agreement referred to both an individual and his wholly-owned corporation, and the individual's signature was followed "Pres.," the individual was also bound under the agreement).[9]

---

[8] Buckley initiated the action in New York; he voluntarily entered into Agreements with a New York unincorporated association containing a New York governing law provision; and he also alleges to have had contact with NFL personnel located in New York during his tenure as a Security Representative.  Am. Compl. ¶¶ 41, 59, 82, 91, 98; Dkt. 43 ¶ 3.

[9] Even if Plaintiffs were not signatories to the Agreements, they nevertheless assumed the obligation to arbitrate when they personally performed the services set forth in the Agreement.  *See, e.g., Gonzalez v. Toscorp Inc.*, 1999

## II.     THE BROAD ARBITRATION CLAUSES ENCOMPASS PLAINTIFFS' CLAIMS

As this Court recognized at the initial conference, courts in the Second Circuit routinely compel arbitration of all claims under "broad" arbitration clauses similar to those at issue here. *See, e.g., Salzano*, 2014 WL 3583195, at *3; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Confronted with this settled case law, Plaintiffs suggest—without citing any relevant supporting authority[10]—that their arbitration clauses do not encompass "employment-related" claims because they only apply to disputes involving the "services provided by Consultant pursuant to this Agreement," which are the "services of an independent contractor." This very same argument was rejected in *Ouedraogo*. 2014 WL 1172581, at *3.[11] This argument further lacks any basis in fact because Plaintiffs' claims are plainly premised on the services they performed under the Agreements and purportedly arise out of their relationship with the NFL, which was governed by the terms of their Agreements. *See, e.g.,* Am. Compl. ¶¶ 12, 48-57. Thus, their claims "touch[] upon" matters discussed in their Agreements and fall within the ambit of the parties' "broad" agreement to arbitrate "any dispute." *See Salzano*, 2014 WL 3583195, at *3; *see also* Def.'s Br. 8-10.

---

WL 595632, at *2-3 (S.D.N.Y. Aug. 5, 1999) (compelling arbitration where plaintiff did not sign the arbitration agreement but acted in a manner consistent with acceptance). Plaintiffs further are estopped from resisting arbitration because they knowingly benefited from the Agreements (financially and otherwise), and their claims against the NFL are premised entirely on those Agreements and the services rendered thereunder. *See, e.g., Merrill Lynch Int'l Fin., Inc. v. Donaldson*, 895 N.Y.S.2d 698 (Sup. Ct. 2010) (compelling non-signatory plaintiff to arbitration because plaintiff reaped the benefits of the employment agreement with defendant).

[10] Plaintiffs cite to *Oldroyd v. Elmira Savings Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998), but *Oldroyd* undercuts, rather than supports, Plaintiffs' position. In *Oldroyd*, the court compelled arbitration of plaintiff's retaliation claim under a provision requiring arbitration of "any dispute…under or in connection with this Agreement" (which is substantially similar to the arbitration clause here), holding that it was a "prototypical broad arbitration provision" that "justifies a presumption of arbitrability." *Id.* Like in *Oldroyd*, the broad arbitration clause here is not susceptible to an interpretation that it excludes the claims asserted in this action. *See id.* at 76; *see also* Def.'s Br. at 8-10 (citing, *e.g., Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000)).

[11] In *Ouedraogo*, the court rejected plaintiff's argument that the arbitration provision did not cover his wage claims because the parties' agreement disclaimed an employer/employee relationship. *Id.* at *3. The court explained that defendant's position that it was "not an 'employer' for purposes of [the] FLSA and NYLL does not contradict its position that the instant employment claims are covered by the arbitration provision," and held that plaintiff's wage claims were covered by the arbitration clause because the agreement formed the basis for the parties' relationship and also set forth plaintiff's rate of compensation. *Id.*

## III.     PLAINTIFFS CAN EFFECTIVELY VINDICATE THEIR STATUTORY CAUSES OF ACTION IN ARBITRATION

Plaintiffs' conclusory assertion that certain language in their arbitration provisions precludes them from effectively vindicating their statutory claims in an arbitral forum is incorrect and does not provide the basis for denial of Defendant's motion.  *First*, the arbitrators' fee-splitting provision does not render the arbitration agreements *per se* unenforceable and Plaintiffs do not come close to satisfying their burden of establishing that the costs of arbitration would be "prohibitively expensive."  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000); *see also Reyes v. Gracefully, Inc.*, 2018 WL 2209486, at *7-8 (S.D.N.Y. May 11, 2018) (declining to sever a cost-sharing provision on this basis and "leav[ing] the interpretation of the cost-sharing provision to the arbitrator.").[12]

*Second*, the language in the Agreements stating that each party "shall bear its own attorneys' fees" is consistent with Plaintiffs' obligations were this case brought in court and does not preclude Plaintiffs from recovering attorneys' fees to the extent they prevail as to their employment claims because any such recovery will be governed by the applicable statutory provision.  *See, e.g., Herrera v. Katz Commc'ns., Inc.*, 532 F. Supp. 2d 644, 647 (S.D.N.Y. 2008) (finding that similar language "cannot fairly be read to be intended to waive or overrule the statutory provision permitting the award of attorney's fees as part of a final award"); *see also Zambrano v. Strategic Delivery Sols., LLC*, 2016 WL 5339552, at *1, 6 (S.D.N.Y. Sept. 22, 2016) (compelling arbitration of FLSA claims where agreement contained attorneys' fees provision because plaintiffs could recover reasonable fees under the statute to the extent they prevailed).

*Third*, contrary to Plaintiffs' claims that their arbitration agreements are "indefinite" with respect to procedures, they clearly provide that arbitration will be conducted pursuant to the

---

[12] To the extent the Court were to find the provision regarding arbitrator fees a hindrance to enforceability (which the NFL respectfully submits that it is not), the Court could sever the arbitrator fees clause in accordance with Section 18(h) of the Agreements prior to compelling arbitration or, alternatively, the fee-splitting provision could be waived by the NFL.  *See, e.g., Salzano*, 2014 WL 3583195, at *5 (compelling arbitration where defendant waived certain provisions, including the fee-shifting provision).  Defendant reserves its right to recover any fees that may be waived should an arbitrator conclude that Plaintiffs were independent contractors who performed services under commercial contracts.

"procedures of the American Arbitration Association ['AAA']." [13]  *See Salzano*, 2014 WL 3583195, at *1 (enforcing arbitration agreement where it provided for arbitration "in accordance with rules of the American Arbitration Association").  Accordingly, the language of the arbitration provisions presents no legitimate basis to render them unenforceable. [14]

## **CONCLUSION**

For all the forgoing reasons, and for the reasons set forth in Defendant's moving brief, Defendant respectfully requests that the Court grant its motion to compel arbitration and stay this action, and all other relief that the Court may deem just and proper.

DATED:       New York, New York
             September 21, 2018

                              PROSKAUER ROSE LLP



                         By: */s/ Elise M. Bloom*
                              _____

                              ELISE M. BLOOM
                              RUSSELL L. HIRSCHHORN
                              NOA M. BADDISH
                              JOSHUA S. FOX
                              Eleven Times Square
                              New York, NY 10036
                              (212) 969-3000
                              (212) 969-2900

                              *Attorneys for Defendant*
                              *The National Football League*

---

[13] Given the nature of Plaintiffs' claims, the Court could specify that the instant dispute be compelled pursuant to the AAA's Employment Arbitration Rules and Mediation Procedures and Employment Due Process Protocol, which provide sufficient due process protections for Plaintiffs to vindicate their statutory rights, including the right to receive "any remedy or relief that would have been available to the parties had the matter been heard in court."  *See* https://www.adr.org/sites/default/files/Employment%20Rules.pdf and https://www.adr.org/sites/default/files/document_repository/Employment%20Due%20Process%20Protocol_0.pdf.

[14] There is also no merit to Plaintiffs' contention that Section 18(b) of their Agreements forecloses their ability to obtain an order of reinstatement if they were to prevail on their discrimination claims. While Section 18(b) addresses the availability of equitable relief in specific circumstances that are not pertinent here, it does not state that those are the only circumstances in which equitable relief may be available.