USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/16/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
JAMES BUCKLEY, et al.,                                        :
                                      Plaintiffs,             :
          -against-                                           :     18 Civ. 3309 (LGS)
                                                              :
THE NATIONAL FOOTBALL LEAGUE,                                 :     **OPINION AND ORDER**
                                                              :
                                      Defendant.              :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Plaintiffs bring this case against Defendant the National Football League (the "NFL"), alleging violations of the Employee Retirement Income Security Act, the Fair Labor Standards Act ("FLSA"), the Age Discrimination in Employment Act ("ADEA") and various other state laws. Defendant seeks to enforce a contractual arbitration clause (the "Arbitration Clause") and compel arbitration. For the following reasons, the motion is granted.

I.    **BACKGROUND**

Plaintiffs James Buckley, Rodney Davis, Mario Di Fonzo, Edward DuBois III, Don Fuhrman, Walter Martin, Mark Ninehouser, Johnny Smith and Richard Welsh provided services as security representatives under the terms of contracts titled "Security Representative Consulting Agreement" (the "Agreements"). Plaintiffs Di Fonzo, Furhman, Ninehouser, Smith and Welsh each entered into an Agreement with the NFL. Each remaining Plaintiff -- Buckley, Davis, DuBois and Martin -- entered into an Agreement on behalf of an entity of which he is the President or Owner/Manager. The Agreements provide that the "Consultant" will provide security services; define Consultant as the individual Plaintiff and his entity together; and state on the last page that "the NFL and Consultant have executed this Agreement."

The Agreements classify Plaintiffs as independent contractors and discuss their rights as such:

> **Consultant an Independent Contractor.** Consultant will furnish his or her services as an independent contractor and not as an employee of the NFL. . . . The payments provided to Consultant under this Agreement constitute adequate consideration for Consultant's rejection of the rights, privileges and benefits that the NFL extends to its employees, and Consultant further understands and agrees that Consultant will not receive pension, welfare, health, vacation, sick leave or any other type of benefits or compensation in connection with the Services other than those expressly included in this Agreement.

The Agreements also provide for compulsory arbitration:

> **Dispute Resolution.** Except as set forth in Section 17(b) (Availability of Equitable Remedies),[1] any dispute arising out of or related to this Agreement or the services performed by Consultant pursuant to this Agreement shall be referred to final and binding arbitration pursuant to the procedures of the American Arbitration Association.

The Agreements by their terms are "governed by and construed in accordance with the laws of the State of New York."

In opposition to the motion, each Plaintiff has submitted a declaration stating that the NFL induced him to sign the Agreement based on the knowingly false representation that the Plaintiff was an independent contractor, rather than employee.

## II.  STANDARD

In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on

---

[1] The "Availability of Equitable Remedies" section is inapplicable, as it provides that the NFL may be entitled to an injunction retraining the Consultant's breach of certain contract obligations, for example, those in the non-competition and confidentiality provisions.

file, together with . . . affidavits," and must "draw all reasonable inferences in favor of the non-moving party." *Id.*

Per the terms of the Agreements, New York law governs matters of state law. *Ministers & Missionaries Ben. Bd. v. Snow*, 45 N.E.3d 917, 922 (N.Y. 2015) ("New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract . . ."). The Agreements state that they are to "to be governed by and construed in accordance with the laws of the State of New York." This provision is properly interpreted as invoking New York substantive law, and not -- as Plaintiffs argue -- merely its conflict-of-law principles. *See id*. at 921 (quoting *IRB—Brasil Resseguros, S.A.*, 982 N.E.2d 609 (N.Y. 2012)) (quoting with approval *IRB*'s reasoning that "parties are not required to expressly exclude New York conflict-of-laws principles in their choice-of-law provision in order to avail themselves of New York substantive law" and extending this reasoning to contracts that fall outside of New York General Obligation Law § 5-1401).

## III. DISCUSSION

### A. Arbitrability

Plaintiffs' claims are arbitrable. The Federal Arbitration Act ("FAA") "embod[ies] [a] national policy favoring arbitration." *Nicosia*, 834 F.3d at 228 (alterations in original) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)). However, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010); *accord Medidata Sols., Inc. v. Veeva Sys. Inc.*, No. 17 Civ. 589, 2017 WL 3503375, at *1 (S.D.N.Y. Aug. 16, 2017). The court considers two factors when deciding if a dispute is arbitrable: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that

3

agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015); *accord Medidata Sols.*, 2017 WL 3503375, at *1.

1. **Agreement to Arbitrate**

Although Plaintiffs Buckley, Davis, DuBois and Martin did not sign the Agreements in their personal capacity, they are estopped from avoiding the Arbitration Clause because they directly benefitted from the terms of the Agreements. The remaining Plaintiffs do not dispute that they agreed to arbitrate. "Whether or not the parties have agreed to arbitrate is a question of state contract law." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012).

Plaintiffs Buckley, Davis, DuBois and Martin signed the Agreements as "President" or "Owner/Manager" of an entity, rather than in their personal capacity. Under New York law, an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement unless there is "clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *L'Aquila Realty, LLC v. Jalyng Food Corp.*, 50 N.Y.S.3d 128, 131 (2d Dep't 2017). "In determining whether the person signing an agreement may be held liable in his individual capacity, it is not sufficient to look only at the signature line in isolation. What is written on a signature line must be understood in the light of the entire agreement." *Wormser, Kiely, Galef & Jacobs, LLP v. Frumkin*, 5 N.Y.S.3d 9, 10 (1st Dep't 2015) (internal quotation marks omitted). The Agreements on their face do not show that Plaintiffs Buckley, Davis, DuBois and Martin had a clear intent to be bound by the Arbitration Clause, because they are not parties to the Agreements. Nevertheless, the Second Circuit recognizes "five theories for binding nonsignatories to arbitration agreements," including estoppel. *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 n.9 (2d Cir. 2013).

4

A party who receives a "'direct benefit' from a contract containing an arbitration clause" is "estopped from denying its obligation to arbitrate." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 39 (2d Cir. 2002); *accord Great Lengths Universal Hair Extensions S.r.L. v. Gold*, No. 16 Civ. 193, 2017 WL 1731184, at *5 (S.D.N.Y. Mar. 29, 2017). A benefit is indirect "where the nonsignatory exploits the contractual relation of parties to an agreement[] but does not exploit (and thereby assume) the agreement itself." *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001); *accord Boroditskiy v. European Specialties LLC*, 314 F. Supp. 3d 487, 495 (S.D.N.Y. 2018).

Plaintiffs Buckley, Davis, DuBois and Martin received benefits that flowed directly from the Agreements themselves. The Agreements state that Consultants, defined as both the Plaintiffs and the entities they represent, shall not be entitled to compensation other than as provided by the Agreements. As the Agreements were the sole means by which Plaintiffs could be compensated for their services, Plaintiffs Buckley, Davis, DuBois and Martin directly benefitted from the Agreements and are bound by the Arbitration Clause they contained. *See, e.g.*, *Johnston v. Electrum Partners LLC*, No. 17 Civ. 7823, 2018 WL 3094918, at *8 (S.D.N.Y. June 21, 2018) (holding that non-signatory to a contract was estopped from avoiding arbitration clause when she performed services pursuant to the contract and received payments from a signatory entity of which she was the sole owner).

### 2. Scope of Arbitration Agreement

Plaintiffs' claims fall within the broad scope of the Arbitration Clause. "[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an

5

interpretation that covers the asserted dispute." *Holick,* 802 F.3d at 395 (alteration in original). Doubts are resolved in favor of coverage. *Id.*

Here, the Arbitration Clause is broad; it states that "any dispute arising out of or related to this Agreement or the services performed by Consultant pursuant to this Agreement shall be referred to final and binding arbitration pursuant to the procedures of the American Arbitration Association." *See, e.g.*, *Johnston*, 2018 WL 3094918, at *10 ("The arbitration provision at issue here, which encompasses 'any and all controversies or claims arising out of or relating to [the] Agreement' (ICA 7), is 'classically broad.'" (alteration in original) (citing *Mehler* v. *Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000))). Therefore, a presumption of arbitrability arises.

Plaintiffs argue that their claims are not within the scope of the Arbitration Clause because "the Agreements expressly disclaim any employer-employee relationship," so they cannot cover Plaintiffs' employment-based claims. However, Plaintiffs' relationship with the NFL is, at the very least, related to the Agreements because without the Agreements, a relationship -- whether as an employee or an independent contractor -- would not exist at all. *See Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12 Civ. 5651, 2014 WL 1172581, at *2 (S.D.N.Y. Mar. 21, 2014) (holding that plaintiff's misclassification claim is governed by his independent contractor agreement with the defendant SCI because "Plaintiff's relationship with SCI is, at the very least, related to the Agreement -- without which it would not exist").

### B. Validity of the Arbitration Clause

A challenge to the validity of an arbitration agreement must challenge "the arbitration clause in particular" and not "the contract as a whole." *See Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 61 (2d Cir. 2012). As a result, the FAA "does not permit the

6

federal court to consider claims of fraud in the inducement of the contract generally. Rather, such claims must be decided by the arbitrator." *Id.* (citation and internal quotations omitted).

Here, although Plaintiffs state that they are challenging the arbitration provision, the substance of their claim challenges the Agreements as a whole. Plaintiffs' fraud claim is based on the fact that "the Agreements were not the result of an arm's length negotiation (but were instead contracts of adhesion presented by the NFL for acceptance) . . . ." A claim that challenges inequality of bargaining power challenges the validity of the entire contract, rather than the arbitration clause alone. *See, e.g.*, *McCoy v. Dave & Buster's, Inc.*, No. 15 Civ. 465, 2018 WL 550637, at *8 (E.D.N.Y. Jan. 24, 2018) ("[P]laintiff's claim regarding inequality of bargaining power challenges the arbitration agreement as a whole, rather than the delegation clauses specifically."). Similarly, Plaintiffs allege that the NFL knowingly misrepresented that they were independent contractors, rather than employees, and as a result, "the NFL deliberately tricked Plaintiffs into believing they had no rights other than the right to be paid according to the terms of the Agreements." These alleged misrepresentations relate to the whole contract -- including clauses that determine wages and benefits -- rather than the Arbitration Clause alone.

## C. Enforceability of Arbitration Clause

Contrary to Plaintiffs' arguments, the Arbitration Clause does not prevent them from vindicating their statutory rights. Plaintiffs also have not shown that the costs associated with arbitration deny them access to the arbitral forum. A court may "invalidate, on 'public policy' grounds, arbitration agreements that 'operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (emphasis omitted); *accord Reyes v. Gracefully, Inc.*, No. 17 Civ. 9328, 2018 WL 2209486, at *6 (S.D.N.Y. May 11, 2018). The Supreme Court has articulated two circumstances under

7

which this principle would invalidate an arbitration clause: (1) when there is "a provision in an arbitration agreement forbidding the assertion of certain statutory rights," and (2) "when cover filing and administrative fees attached to arbitration . . . are so high as to make access to the forum impracticable." *See Italian Colors*, 570 U.S. at 236; *accord Reyes*, 2018 WL 2209486, at *7–8.

### 1. Statutory Rights

The Agreements do not prevent Plaintiffs from pursuing equitable remedies, including reinstatement, in the arbitral forum. Plaintiffs argue that Section 18(b) of the Agreements proscribes contractors from pursuing equitable remedies for violations of employment laws. However, 18(b) relates only to injunctions to enforce Plaintiffs' obligations not to compete, to maintain confidentiality and not to use NFL marks, and does not prohibit Plaintiffs from pursuing any equitable remedies to which they are otherwise entitled.

The Arbitration Clause also does not prevent Plaintiffs from accessing the fee-shifting provisions of statutes like FLSA and ADEA, as Plaintiffs claim. Although the Arbitration Clause states that "each party . . . shall bear its own attorneys' fees," it does not expressly prohibit the prevailing party from recovering attorneys' fees under the terms of FLSA and ADEA. Additionally, the American Arbitration Association ("AAA") rules that govern the parties' arbitration proceedings provide that "[t]he arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law." *Employment Arbitration Rules and Mediation Procedures*, § 39(d). As a result, Plaintiffs can vindicate their statutory right to attorneys' fees under the Arbitration Clause.

### 2. Access to the Forum

An arbitration agreement is unenforceable when "filing and administrative fees attached to arbitration . . . are so high as to make access to the forum impracticable." *Italian Colors*, 570 at 236.

The Arbitration Clause provides that parties will share the costs associated with arbitration (see, e.g., Dkt. 31-1 at 7/9). Plaintiffs have not presented any evidence about their own financial circumstances, the expected costs of arbitration or the likelihood that Plaintiffs will incur these costs given the AAA's provisions for reducing or deferring fees. Absent these facts, "the mere risk of prohibitive costs is too speculative to justify invalidating an arbitration clause." *See Zambrano v. Strategic Delivery Sols., LLC*, No. 15 Civ. 8410, 2016 WL 5339552, at *7 (S.D.N.Y. Sept. 22, 2016) (internal quotation marks omitted) (plaintiffs had not shown a likelihood of incurring full costs associated with arbitration when the arbitration forum had many pro bono, fee waiver and deferral provisions).

### D. Proceeding Stayed

This matter is stayed to allow the arbitration to proceed and conclude, pursuant to the FAA, 9 U.S.C. § 3, and Second Circuit precedent. *See Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested.").

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration is GRANTED and the case is stayed pending the outcome of arbitration. Plaintiffs' Motion to Reconsider a stay on discovery is DENIED as moot. The parties are directed to file a status letter with the Court every 45 days and when the arbitration concludes.

The Clerk of Court is respectfully directed to close the motion at Docket Number 29.

Dated: November 16, 2018
New York, New York

SO ORDERED

HON. LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE